## No. 16,336.

### Baer Bros. Land and Cattle Company
### *v.* Hill et al.
(224 P. [2d] 944)

Decided September 18, 1950.  Rehearing denied November 20, 1950.

Mr. L. E. F. TALKINGTON, Mr. ROBERT E. HOLLAND, for plaintiff in error.

Mr. FRANK DELANEY, Mr. EMORY L. O'CONNELL, for defendants in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

THIS is an action brought by the Baer Bros. Land and Cattle Company against Kenneth A. Hill, Monroe M. Hill and Richard A. Paulsen to recover a balance alleged to be due upon a promissory note signed by the defendants and payable to the Rawlins National Bank, which note was paid by the plaintiff as guarantor. Defendants admit the execution of the note, deny that there is any sum due thereon, and affirmatively assert two counterclaims in which they allege that they leased from plaintiff certain parts of the K Bar T ranch at a cash rental of $15,000, payable December 31, 1947, for which they executed a note, and chattel mortgage to secure its payment; and that said note and chattel mortgage became due December 31, 1947. Defendants further allege that in consideration of the payment by them of the sum of $6,000 on said note and chattel mortgage prior to December 31, 1947, plaintiff agreed to give them a reasonable length of time after the last mentioned date in which to sell and dispose of the mortgaged crops raised on the leased premises and pay the chattel mortgage indebtedness. Defendants further allege in their answer and counterclaim that plaintiff thereafter refused to give any extension of time, but instead took possession of said property and converted it to his own use; that as a result thereof, they have been damaged in the sum of $9,041.48, which they allege, is the difference between the fair market value of the property at the time plaintiff took possession thereof and the amount remaining due on the

indebtedness secured by the chattel mortgage. It further is alleged in the counterclaim that plaintiff offered said property for sale in one lot instead of in various parcels or lots; that, without lawful authority, it purchased said property at the sale; and, as a result thereof, became obligated to defendants for the full value of said property. Defendants in their answer offered to have any balance due on the chattel mortgage and note to plaintiff or to the Rawlins National Bank deducted from any amount found to be due them.

The cause was tried before a jury and a verdict returned in favor of defendants on their counterclaim in the sum of $9,041.48. Judgment was entered upon the verdict and plaintiff brings error.

It is contended by plaintiff that the judgment should be reversed and the cause remanded for a new trial by reason of three alleged erroneous instructions given by the trial court to the jury. Said instructions are as follows:

"Instruction No. 5

"The Court instructs the jury that the sum of $773.00 derived from the sale of steers covered by the chattel mortgage and paid to the Rawlins National Bank should have been credited upon the promissory note set forth in the complaint, after which there remained unpaid on said note the principal sum of $773.98. The interest which accrued subsequent to January 14th, 1948, up to this date, at the rate of six per cent. per annum, amounts of $29.28, making a total sum of $803.26."

"Instruction No. 6

"You are instructed that if you find from a preponderance of the evidence that the reasonable value of the mortgaged property was, at or about the time of the sale by the plaintiff, in excess of the mortgage indebtedness, then the defendants are entitled to recover under this counter-claim, provided that you further find from a preponderance of the evidence:

"1. That in consideration for the execution and de-

livery by defendants Paulsen and his wife of a new Trust Deed or Mortgage on the Arvada property, by which $6,000 was made immediately available to plaintiff (and which need not have been paid until a later date under the original arrangement) the plaintiff agreed to give defendants a reasonable length of time to sell and dispose of their crops, but instead plaintiff took possession of said crops before the expiration of a reasonable time and claimed the same as his own property; or, (2), if plaintiff offered said property at public sale and purchased said property at said sale, then you should find the issues joined on the counterclaim in favor of the defendants.

"In either case above outlined, if you find the issues in favor of the defendants, you should allow them a sum equal to the difference between the fair market value of the property covered by the crop mortgage which came into the possession of the plaintiff, and the balance due as rental under the terms of the lease and the note and chattel mortgage given by defendants to secure payment of said rental."

"Instruction No. 7

"If you find for the defendants on the counter-claim, then you are to allow the defendants interest on the amount you find they are entitled to recover, from February 7, 1948, at six per cent. per annum, and deduct from the sum due the defendants the said sum of $803.26, if the same is more than the amount due plaintiffs on the note described in the complaint, namely, the sum of $803.26. If, however, you find that defendants are entitled to recover some sum, but are not entitled to recover as much as $803.26 from plaintiff, then you are to deduct the amount due defendants from the $803.26 due plaintiff and render a verdict for plaintiff for the difference.

"If you find defendants are not entitled to recover any sum, then you are to render a verdict in favor of plaintiff for $803.26.

It is stated by counsel for plaintiff in error in their brief: "We believe that the matter of the verdict is alone sufficient for reversal and we might well stake our chances for reversal on this error alone. The verdict is erroneous in substance and not form, and, therefore, cannot be corrected and necessitates a new trial on the issues."

The gist of the argument of counsel for plaintiff is that, the above instructions do not correctly state the law, and invade the province of the jury; that the jury did not follow the instructions; and that said instructions were confusing to, and were not understood by, the jury.

With respect to instruction No. 5, plaintiff's counsels' only objection thereto at the trial was, "that it does not correctly state the law and invades the province of the jury without a directed verdict." It is not contended by counsel that the sum of $803.26 is not the correct amount due on the Rawlins National Bank note and mortgage, but on the contrary, they virtually concede that amount to be correct. It is stated in their brief: "Some of this confusion could have been avoided by the court directing a verdict for the plaintiff in the sum of $803.26, the amount stated by the court to be due plaintiff on plaintiff's cause of action on the Rawlins National Bank note. The record will show that we insisted upon this course to avoid confusion, without avail." Instruction No. 5 was tantamount to a directed verdict in favor of plaintiff in the above-mentioned sum, as asked for by plaintiff, and we are convinced that there is no cause for confusion or uncertainty with reference thereto. However, if there is any conceivable doubt, uncertainty or confusion—as plaintiff's counsel claim—in instruction No. 5, it was completely removed by the following portion of Instruction No. 7: "If you find defendants are not entitled to recover any sum, then you are to render a verdict in favor of plaintiff for $803.26."

Neither do we find confusion in instruction No. 6. The

jury thereby was plainly told that, even though the reasonable value of the mortgaged property sold by plaintiff exceeded the mortgage indebtedness, nevertheless, it could not return a verdict for defendants unless it also found either, (1) that plaintiff had agreed to give defendants a reasonable time in which to sell, dispose of, and remove the crops after the expiration of the lease, and that plaintiff took possession thereof before the expiration of such reasonable time; or (2) that plaintiff offered said property at public sale and itself purchased said property at such sale.

It does not appear which of the two alternatives the jury found to exist. It is certain that it found as a fact that one of them existed. Plaintiff failed to submit, as it had a right to do, special interrogatories for the purpose of ascertaining the true factual status, and in the absence of such request it is in no position successfully to complain with reference thereto.

It is evident from the record that there is no ground for confusion as to what is meant by instruction No. 6, and no basis for the statement that such instruction is inconsistent with other instructions.

We are satisfied that the issue as to whether or not plaintiff did agree for a valuable consideration to extend the time for the sale, removal and disposition of crops on the leased premises by defendants, and as to whether plaintiff sold them prior to the expiration of such reasonable time in violation of such agreement, was fairly presented by the trial court to the jury in its instructions; that such issue was by it decided adversely to the contention of plaintiff, and we are now precluded from disturbing the jury's finding thereon.

The principal objection of counsel for plaintiff in error to instruction No. 6 is that, as said, it does not correctly state the law applicable to the facts here considered. It also is contended by counsel that "Instruction No. 6 is further objectionable on the grounds that the jury is told that defendants be allowed a fair market

value of the property when the law provides that the mortgagee in conducting a sale under a chattel mortgage is not necessarily bound to realize the market value of the property so sold, but is held only to the exercise of reasonable care and diligence in the disposition of the property and account for any surplus over and above the debt. That the mortgagee, when condition is broken is given the right to take possession, and in the absence of fraud, sell the mortgaged property, cannot be disputed." On the other hand defendants' counsel contend: "It is to be remembered that defendants in their counterclaim predicated liability of the plaintiff upon two theories. The first was that the plaintiff had agreed to a reasonable extension of time for disposing of the mortgaged property and that that agreement was violated by the taking of possession immediately upon the hour the note was originally due. Upon this basis the defendants claimed an unlawful conversion as of January 1, 1948. The second theory was that even though it should be found, as a disputed question of fact, that the plaintiff had not violated any such agreement and was entitled, under its mortgage, to possession on January 1, 1948, still it became liable to account as a trustee when it refused to sell the property except in bulk, and then attempted to buy at its own sale. It was to explain these contentions to the jury that instruction No. 6 was given."

Our court held adversely to the above contention of plaintiff in *Webber v. Emmerson,* 3 Colo. 248. In that case Emmerson had executed a chattel mortgage to Webber upon certain furniture. Upon default, the latter took possession, sold the furniture at public auction, and bid it in at the sale. Some time later Webber brought suit against Emmerson asking judgment for an alleged deficiency, and defendant pled by way of setoff that plaintiff had taken the mortgaged property, had made a pretended sale, and that Webber himself had, without authority, purchased the property at the sale, and converted the same to his own use. Defendant further al-

leged that the property had a reasonable value of $2,500 and asked judgment for the excess in value of the property over the amount due on the mortgage. A verdict was rendered in favor of the defendant. On review of the judgment our court said:

▮ "If the mortgage sale had been conducted in strict accordance with law, and the property had been purchased, not by the mortgagee, but by one competent to buy, the liability of Webber would be measured by the value of the property, as determined by the price paid by the highest bidder, for the excess of which over and above the amount due on the note he would be required to account. But when the mortgagee, unmindful of his fiduciary relation, assumes, in the absence of an agreement with the mortgagor, to purchase the mortgaged property, and to appropriate it to his own use, he violates the trust reposed in him and becomes liable for the actual value of the property at the time of such sale without regard to the price bid.

▮ "The law prohibits a trustee, where interest and duty so clearly conflict, from purchasing and holding for his own use and benefit property toward which he sustains a fiduciary relation. Webber's liability arises, therefore, not from the purchase made at the mortgage sale, but from the fact that he reduced to possession, and without warrant of law converted to his own use, the mortgaged property."

In *Thompson v. Hartman,* 72 Colo. 88, 209 Pac. 635, the mortgagee was the purchaser at the mortgage sale. The evidence, however, established that the value of the property sold was less than the debt. The court held that under such circumstances there could be no recovery against the mortgagee. However, at page 89 of the official report our court said:

"The contention of the defendant is that the sale was a private sale and that the seller could not purchase at such sale. We will assume that such is the fact, and also

assume the correctness of the rule quoted by counsel for defendant from 11 C.J. 711, Section 517, as follows:

"The rule supported by the weight of authority is that in the absence of a statutory permission, the mortgagee is prohibited from purchasing at his own sale, either directly or through the medium of an agent.

"In the instant case the purchaser, defendant, was credited with $700 by the seller on account of such sale. The text in 11 C.J. above quoted is followed by the following clause: 'And in case of such a purchase the mortgagee must account for the actual value of the property mortgaged.'

"This is consistent with *Webber v. Emmerson*, 3 Colo. 248, where it was held that a mortgagee who purchased at a mortgagee's sale must account for the actual value of the property without reference to the amount bid."

It further is contended by counsel for plaintiff, "This verdict is manifestly wrong in denying the plaintiff any recovery whatever and clearly in disregard of the instructions hereinbefore set out. Plaintiff was entitled to a verdict in the sum of Eight Hundred Three Dollars and Twenty-six Cents ($803.26) or a finding that plaintiff was entitled to that sum or a credit in that amount." This contention is based upon the fact that the jury returned a verdict in favor of defendants in the sum of $9,041.48, the amount for which they sought judgment in their counterclaim, and the further fact that it was not disputed, as the trial court found, that defendants owed plaintiff $803.26 on the Rawlins National Bank note. It is argued that the above circumstance was conclusive; that no credit was made to plaintiff for the amount admittedly due him, and that the jury did not follow the instruction which required it to deduct $803.26 from any sum it found due defendants on the note and mortgage.

In the answer of defendants, they alleged, "That the defendants did not owe to exceed the sum of $6,105.04 on said note at the date of said sale and had equity in

said crops amounting to *at least* $9,041.00," for which amount judgment was prayed. (Emphasis supplied)

Evidence was submitted on behalf of defendants that the crops, which plaintiff attempted to sell under the provisions of the chattel mortgage, were worth:

"Loose Hay ..................847 tons at $18.00      $15,246.00
"Bailed Hay .................. 88 tons at $22.00       1,936.00
"Wheat .......................289 bushels at $2.10         588.00
                                                    _____
                                            "Total $17,770.00"

■ It is conceded in the briefs of the parties hereto that at the time of the alleged sale, defendants were indebted to plaintiff on the original note and mortgage in the sum of $6,105.04, and that there was due plaintiff on account of the Rawlins National Bank note and mortgage the sum of $803.26, or a total of $6,908.30. The difference between the amount due plaintiff and the maximum value of the crops, as shown by the evidence, is $10,861.70. We can find no merit in plaintiff's contention that the jury did not follow the instructions of the trial court when it returned a verdict for $9,041.48.

We conclude that the court by its instructions properly stated the law applicable to the issues involved herein, and that it committed no error in the giving or refusing of instructions.

The judgment accordingly is affirmed.

Mr. Justice Alter and Mr. Justice Holland not participating.