Nicholas J. SPRUNG, Plaintiff–Appellant,

v.

Mark E. ADCOCK, Defendant–Appellee.

No. 94CA1153.

Colorado Court of Appeals,
Div. V.

Aug. 10, 1995.

Rebstock & Kelley, P.C., Holly E. Rebstock, Lillian S. Lehrburger, Denver, for plaintiff-appellant.

No appearance for defendant-appellee.

Opinion by Chief Judge STERNBERG.

Plaintiff, Nicholas J. Sprung, appeals from an amended judgment entered against defendant, Mark E. Adcock, awarding Sprung damages for losses resulting from the improper construction of his home. Specifically, Sprung contests the trial court's calculation of compensatory and exemplary damages. We agree with his contentions and, therefore, reverse and remand for correction of the judgment.

In 1987, Sprung contracted to buy a home from two partners, Paul Bergner, the architect and builder of the home, and Mark

Adcock, who managed the construction project. An addendum to the contract required that an engineer conduct a soil and foundation study. He did so and prepared a report which recommended that caissons, drilled a minimum of five feet into bedrock, be installed to support the foundation because of expansive soils present at the building site. This recommendation was not followed, and the caissons were driven to an inadequate depth. Adcock did not inform Sprung of either the contents of the soils report or the failure to construct the foundation according to the report's recommendations.

When construction was nearly complete, Sprung discovered a crack in the foundation and brought the defect to Adcock's attention. At Sprung's insistence and prior to closing, Adcock executed a written one-year guarantee of the house and its foundation. Despite remedial efforts, expansion and movement of the soil underlying the residence caused extensive structural damage.

Sprung sued Adcock and other defendants who had participated in the planning and construction of the home. Sprung's claims for relief against the defendants included, *inter alia,* negligent construction, breach of the construction contract, breach of express warranty, misrepresentation, violation of § 6–6.5–101 C.R.S. (1992 Repl.Vol. 2), emotional distress, and willful and wanton misconduct. Prior to or during the trial, all defendants except Adcock settled with Sprung.

Following a bench trial, on January 11, 1993, the court ruled in Sprung's favor on all claims except as to breach of the construction contract. It did not enter judgment on that claim because it was awarding damages for breach of express warranty. The court awarded $246,034 on the negligence claim and $124,840 on the breach of warranty claim and the same amount on the misrepresentation claim. The court then merged the judgments.

The court found that Adcock and Bergner were liable jointly and severally for 25% of the negligence damages and that settling defendants, Homestake Engineering, Inc., and its president, Wayland Britt, were liable jointly for the remaining 75%. No percentage of fault was attributed to the other settling defendants. The court determined that Adcock's pro rata liability was $61,508.50 and ordered Bergner's $12,500 settlement to be set off from that amount.

The court found Adcock liable for 100% of Sprung's damages on the breach of express warranty and misrepresentation claims; nonetheless, the court ordered all amounts that had been paid to Sprung by settling defendants to be set off from the award. The gross compensatory award on those claims was $124,840 which included reconstruction costs of $105,840, engineering fees of $4,000, and non-economic damages of $15,000.

Finding that Adcock's failure to disclose the soils report was "fraudulent and demonstrated a wanton and reckless disregard of [Sprung's] right to a properly built residence," the court awarded $75,000 in exemplary damages.

On February 4, 1993, *nunc pro tunc* January 11, 1993, the court entered a judgment for $148,094.60 in favor of Sprung and against Adcock. After a hearing, the court entered a Second Amended Order for Judgment on May 26, 1994, *nunc pro tunc* January 11, 1993, for a net award of $44,140.88 against Adcock. The court reduced the exemplary damages award to $5,676.10 so that such damages would not exceed the net compensatory damages award, after setoffs, on the misrepresentation claim. This appeal followed.

## I.

■ Sprung asserts that the trial court erroneously computed the compensatory damages to which he was entitled by setting off amounts that he had received from settling defendants from the gross compensatory damage award for the breach of warranty and misrepresentation claims. We agree.

*Smith v. Zufelt,* 880 P.2d 1178 (Colo.1994), announced after the trial court's decision in this case, requires reversal. In *Zufelt,* the court concluded that, under § 13–21–111.5, C.R.S. (1987 Repl.Vol. 6A), the jury award against nonsettling defendants should have

been reduced only by the amount equivalent to the percentage of liability attributed to the settling nonparties irrespective of settlement amounts paid to the plaintiff.

Prior to 1986, § 13–21–111.5 provided that an award rendered against a nonsettling party be reduced by the amount paid in settlement by joint tortfeasors. *See* Colo.Sess. Laws 1986, ch. 108, § 13–50.5–105 at 680, 681. That offset provision was replaced by the current language which requires that the verdict be reduced by the degree or percentage of fault attributed to the settling party by the fact finder. The amount to be deducted, if any, from the trial verdict should be calculated by multiplying the total percentage of liability attributed to the settling defendants by the total trial verdict awarded the plaintiff. Therefore, in those instances in which the settling defendants are not determined to be at fault, the plaintiff's trial award should not be reduced. *Smith v. Zufelt, supra.*

Here, the trial court awarded Sprung $246,036 on his negligence claim and determined that Adcock's pro rata liability for the negligence damages was $61,508.50. In so doing, the court properly set off $184,535.50 from the total negligence award attributing 75% fault to Homestake and Britt.

On the breach of warranty and misrepresentation claims, the court awarded Sprung $124,840; however, it erroneously ordered the settlement amounts from Bergner and the other defendants to be deducted from that amount, yielding a net award of $15,-676.10.

■ Ignoring the award for breach of warranty, because 100% of the fault for the misrepresentation claim was allocated to Adcock, the trial court erred by reducing the compensatory award for those claims by any settlement amounts received by Sprung from other defendants. Thus, the judgment must be corrected so that Adcock is required to pay $124,840, the total amount of the damages.

This result encourages the settlement of disputes and allows the injured party, rather than the nonsettling tortfeasor, to benefit from a settlement with joint tortfeasors.

*Smith v. Zufelt, supra; see also McDermott, Inc. v. AmClyde,* —— U.S. ——, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994) (unanimously concluding that the liability of nonsettling defendants should be calculated with reference to the jury's allocation of proportionate responsibility, rather than the dollar amount of the settlement).

## II.

We also agree with Sprung that, upon merger of the claims, the larger award survives as the basis for compensatory damages.

■ A plaintiff is entitled to only one recovery for losses incurred because of defendant's conduct; however, when claims are merged the larger of the awards survives. *See Montgomery Ward & Co. v. Andrews,* 736 P.2d 40 (Colo.App.1987). This result comports with the policy that, in determining the proper measure of damages, whoever unlawfully injures another shall make the injured person whole. *Munson v. Boettcher & Co.,* 832 P.2d 967 (Colo.App.1991), *aff'd,* 854 P.2d 199 (Colo.1993).

Here, the trial court properly merged the claims in entering its damage award, but erroneously calculated the amount of compensatory damages on the merged claims. When no setoffs are applied, the $124,840 damage award is the larger one, and this sum should be entered as compensatory damages.

## III.

Finally, we address Sprung's contention that the trial court erred by reducing the exemplary damage award from $75,000 to $5,676.10. Specifically, Sprung argues that the trial court could award $75,000 consistent with the requirements of § 13–21–102(1), C.R.S. (1987 Repl.Vol. 6A) and the rule of *Lira v. Davis,* 832 P.2d 240 (Colo.1992). We agree.

■ Section 13–21–102(1) mandates a one-to-one limitation of exemplary damages to "actual damages awarded," measured by the amount of compensatory damages after reduction for comparative negligence and pro

rata liability by the court. *Lira v. Davis,* *supra.*

In its January 13, 1993, order, the trial court explicitly found that Adcock's failure to disclose the soils report to Sprung was "fraudulent and demonstrated a wanton and reckless disregard of Sprung's right to a properly built residence" and awarded $75,000 in exemplary damages to Sprung. The court noted that:

> Mr. Adcock was interested in closing on the property. [Adcock] urged Mr. Sprung to close without telling [Sprung] the truth. The guarantee was little more than an artifice by which Mr. Adcock hoped to placate Mr. Sprung.

On June 1, 1994, however, the court amended its order and reduced the exemplary damage award to $5,676.10 so as not to exceed the amount of the reduced compensatory damage award on the breach of warranty and misrepresentation claims.

We have concluded above that the trial court should award $124,840 to Sprung based on Adcock's liability for misrepresentation. Thus, § 13–21–102 does not require reduction of the $75,000 exemplary damage award.

The portion of the judgment reducing the $124,840 compensatory damages award in favor of Sprung by the settlement amounts received from other defendants is reversed, as is the exemplary damages award. The $500 award for violation of § 6–6.5–101 is affirmed. The cause is remanded with directions that the court reinstate its original judgment which awarded Sprung $124,840 in compensatory damages and $75,000 in exemplary damages, and recompute its award of prejudgment interest and costs.

RULAND and ROTHENBERG, JJ., concur.